■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SIDNEY BUTLER, Appellant. [601 NYS2d 711] —Appeal by the defendant from a judgment of the County Court, Westchester County (Lange, J.), rendered April 5, 1991, convicting him of murder in the second degree and criminal possession of a weapon in the third degree, upon a jury verdict, and imposing sentence.

Ordered that the judgment is reversed, on the law, and a new trial is ordered. No questions of fact were raised or considered.

Under the circumstances of this case, we conclude that, while the County Court properly refused to charge the lesser-

included offense of manslaughter in the second degree *(see,* Penal Law § 125.15 [1] [mental state: conscious disregard of substantial and unjustifiable risk of death]; *People v Weems,* 105 AD2d 763), it erred in refusing to charge the lesser-included offense of manslaughter in the first degree *(see,* Penal Law § 125.20 [1] [mental state: intent to cause serious physical injury]; *People v Aviles,* 80 NY2d 997).

We have examined the defendant's remaining contention and find it to be without merit. Bracken, J. P., Rosenblatt and O'Brien, JJ., concur.

Copertino, J., dissents and votes to affirm, with the following memorandum: According to the pathologist from the West-chester County Medical Examiner's office who performed the autopsy, the victim died from stab wounds to her chest, back, abdomen, and extremities, with hemorrhages. There were 34 stab wounds in all, and three more wounds to the face caused by a blunt object. Upon being shown a photograph of the defendant's hands, taken at the time of his arrest, the patholo-gist testified that the injuries he saw indicated that the hand holding the weapon had grown slippery during the attack, leading to transverse wounds as it slipped down the handle and over the blade during the repeated stabbings. (The police recovered the handle of a kitchen knife in a pool of blood in the victim's apartment, but not the blade.)

The defendant contends that he was intoxicated at the time this savage attack occurred. The salient evidence regarding intoxication was as follows: there was testimony from the victim's cousin that about 2:30 A.M. on the day of the homicide he, the defendant, and the victim had consumed "a few beers". The three then ingested cocaine by "snorting" the drug. The witness stated that all three were "feeling all right" but were not "high". The defendant also smoked about half of a marihuana cigarette. About two hours later the witness, who was working as a car service dispatcher, called for a cab driver to take the victim to her apartment and the defendant to another location. The witness testified that the defendant appeared "all right" and "level head[ed]". The cab driver testified that as he drove towards the victim's apartment she and the defendant were engaged in "friendly conversation". They were dropped at the victim's apartment building at 146 South Broadway in Yonkers, across the street from a McDon-ald's restaurant.

At about 7:00 A.M. another witness saw the defendant squatting against the wall in the hallway of another building,

where the witness had been visiting a friend. This witness testified that the defendant appeared to be nervous and scared. She asked if he were all right, to which he responded, "Yes, he was a little * * * up in the head because he just killed somebody". Thinking he was joking, she asked if the cause was money, and he answered "yes". He told the witness that the homicide had occurred "across the street from McDonald's." She further testified that he told her that he wanted to change his clothes, then took something from inside his coat and threw it down the incinerator chute. He asked her how to exit the building, and the witness told him. To the witness, the defendant did not appear to know where he was or what he was doing. "He just was talking. He was just running off".

Pursuant to the defendant's request, and over the People's objection, the court charged the jury on intoxication. Intoxication, while not a defense to this or any other crime, may be offered to negate an element of the offense charged (see, Penal Law § 15.25). Such a change "should be given if there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis" (People v Perry, 61 NY2d 849, 850).

The instruction need not be given in all cases, however. If the evidence that the defendant had ingested narcotics is inconclusive, a court may conclude that the jury could not reasonably infer from that evidence that the defendant's capacity to form the necessary intent had been affected (see, People v Rodriguez, 76 NY2d 918, 921). I believe that in the present case, the trial court may have read the requirements of Perry too broadly, and thus gave an intoxication charge where one was unnecessary.

Neither Perry nor Rodriguez precludes the trial court from considering circumstances other than the mere quantity and quality of intoxicants when considering whether a jury could reasonably infer that intoxication interfered with the defendant's ability to form the requisite intent—for intent, after all, is what is at issue here. I submit that where evidence of intoxication is equivocal but the circumstances of the crime are not—at least with respect to the defendant's intent—an intoxication charge need not be given. In this case the evidence clearly shows that if the defendant intended anything, he intended to kill. As a result, the trial court here was not required to charge intoxication, nor, consequently, manslaughter (cf., People v Perry, supra). Support for this position may be

found in the case law which controls the defendant's right to an instruction on lesser included offenses.

A duty exists to charge the jury on the lesser degree of a crime where, upon a view of the evidence most favorable to the defendant, a juror could rationally conclude that the defendant committed the lesser offense but not the greater *(see,* CPL 300.50; *People v Battle,* 22 NY2d 323). However, the mere *possibility* that jurors might so conclude does not require submission of every charge requested by a defendant. As the Court of Appeals has stated, a charge down is not required where "any view" of the evidence would support a conviction of the lesser but not the greater crime, but rather only where a "reasonable view" of the evidence would support that result. A jury should not have absolute freedom to convict on any rung of the ladder of offenses in the same category and thus " ' "to resort to sheer speculation" ' " *(People v Scarborough,* 49 NY2d 364, 373, quoting *People v Discala,* 45 NY2d 38, 43).

Accordingly, this Court has repeatedly supported denial of a manslaughter charge request in homicide cases where the circumstances of the slaying were such that the criminal actor could not have intended anything but the death of his victim. These cases share a common thread: the defendant used a deadly weapon and used it repeatedly *(see, People v Moore,* 192 AD2d 560 [nine stab wounds, including three to chest]; *People v Ochoa,* 142 AD2d 741 [repeated gunshots to upper body at close range]; *People v Boo Wat Cheung,* 141 AD2d 556 [victim shot 11 times]; *People v Moore,* 135 AD2d 839 [victim shot four times at short range]; *People v Chun Huen Lam,* 131 AD2d 584 [victim shot 11 times, 4 times in head]).

In this particular case, the trial court had before it an equally barbaric homicide which pointed to but one rational conclusion. The 34 stab wounds, many to vital areas of the body, demonstrated that the defendant must have intended to kill his victim. This Court has previously recognized that even where the actor may have been intoxicated, such circumstances can preclude a finding of a lesser state of mind. In *People v Bell* (111 AD2d 926), the defendant was convicted of that type of manslaughter in the first degree which required that he had intended to kill his victim, albeit under extreme emotional disturbance *(see,* Penal Law § 125.20 [2]). The defendant claimed that he was so intoxicated that he had been unable to form the intent to kill. This Court, noting the uncontroverted evidence that the victim had been shot three times and stabbed 51 times, held that there was no reasonable view of the evidence which would support a finding other than

that he acted intentionally. That is no less true in the present case. Further, even viewing the actions of the defendant in a light most favorable to his position on intoxication *(see, People v Battle, supra),* eyewitness testimony established that he was, at a minimum, coherent. He also, at a minimum, left the scene of the crime and expressed a desire to change his clothes after the bloody attack. These factors militate against a rational finding that intoxication prevented him from recognizing the distinction between acts which would lead to death and those which would not.

In sum, the jury could not have rationally concluded that intoxication caused the defendant to believe that in stabbing his victim over and over, until his hands were so slippery from blood that the handle of the weapon no longer could be held securely, he would do no more than injure her. I therefore dissent and vote to affirm the judgment of conviction.